| | |
|---|---|
| YOSILA GODINEZ, *et al.*,<br><br>    **Plaintiffs,**<br><br>        v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br><br>    **Defendants.** | Civil Action No. 20-1833 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Yosila Godinez, Oscar Velasquez Esteban, and N.V.E., a minor, filed this suit seeking to reverse the United States Citizenship and Immigration Services' denial of their I–765 applications for Employment Authorization Documents. They contend that this denial, rendered by the USCIS National Benefit Center (NBC) in Lee's Summit, Missouri, was arbitrary and capricious, as well as contrary to their Fifth Amendment rights. Defendants — the Department of Homeland Security and USCIS — now move to transfer this case to the Western District of Missouri. As the relevant factors favor transfer, the Court will grant Defendants' request.

**I.    Background**

Plaintiffs are citizens of Guatemala who were abandoned or neglected by their mothers and who entered the United States when they were minors with hopes of finding their fathers. See ECF No. 1 (Compl.), ¶¶ 12–14. Godinez made the trek when she was 16, while brothers Esteban and N.V.E. traveled here when they were 13 and 11, respectively. Id. After arriving in the country, each Plaintiff reunited with his or her father. Id. State-court judges subsequently

1

determined that it was in each child's best interest not to be returned to Guatemala or reunited with his or her mother, and they granted Plaintiffs' fathers sole custody of their children. Id.

Based on these determinations, each Plaintiff petitioned for Special Immigrant Juvenile (SIJ) status, a form of immigration relief that provides a path to lawful permanent residency for adolescent immigrants who cannot be reunited with a (presumably foreign) parent because of abuse, abandonment, or neglect. Id., ¶¶ 12–14, 24; see also 8 U.S.C. § 1101(a)(27)(J); id. § 1255(a), (h). USCIS granted these petitions, and each Plaintiff then submitted I–765 applications for EADs, which are available to certain noncitizens and which enable those individuals to engage in lawful employment as well as to obtain a social-security card and driver's license. See Compl., ¶¶ 3–5, 12–14; see also 8 C.F.R. § 274a.13; Instructions for Application for Employment Authorization, Department of Homeland Security (Aug. 25, 2020), https://www.uscis.gov/sites/default/files/ document/forms/i–765instr.pdf. The NBC in Lee's Summit, Missouri, denied Esteban and N.V.E.'s EAD petitions in October 2018 and Godinez's in April 2020 because it determined that each Plaintiff had not provided required documentation to show that he or she was "in parole status" and thus had "not establish[ed] [his or her] eligibility to apply" for the authorization. See ECF No. 8–2 (Godinez denial); ECF No. 8–3 (Esteban denial); ECF No. 8–4 (N.V.E. denial); Compl., ¶¶ 12–14. Parole is a status that USCIS grants to some immigrants, including those who apply for admission to the country for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Without EADs, the Complaint alleges that Godinez cannot pursue her dream of becoming a doctor, Esteban cannot join the Marines, and N.V.E. cannot take college classes. See Compl., ¶¶ 12–14.

Plaintiffs, who live in Kansas City, Missouri, subsequently brought this suit in July 2020, maintaining that the EAD denials were arbitrary and capricious, an abuse of discretion, and not

2

in accordance with the law, as well as contrary to their Fifth Amendment due-process rights. Id. at 1, ¶¶ 28–37; see also 5 U.S.C. § 706(2)(A)–(B). They allege that SIJ grantees qualify as parolees under immigration law and explain that, "even though the regulations allow parolees to obtain an EAD, USCIS arbitrarily refuses to recognize SIJ[] grantees as parolees when they request EADs." Compl., ¶¶ 2, 5. They further maintain that the denial constitutes a "cognizable 'deprivation of liberty that triggers the procedural guarantees of the Due Process Clause.'" Id., ¶ 36 (quoting Trifax Corp. v. Dist. of Columbia, 314 F.3d 641, 643–44 (D.C. Cir. 2003)). Without touching the merits, Defendants now move to transfer the case under 28 U.S.C. § 1404 to the Western District of Missouri. See ECF No. 8–1 (MTT).

**II.   Legal Standard**

Even if a plaintiff has brought her case in a proper venue, a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer [it] . . . to any other district . . . where [the case] might have been brought." 28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

The burden is on the moving party to establish that transfer is proper. Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). To prevail, the movant must first show that the plaintiff could originally have brought the case in the transferee district. Treppel v. Reason, 793 F. Supp. 2d 429, 435 (D.D.C. 2011). The movant must also establish that "considerations of convenience and the interest of justice weigh in favor of transfer . . . ." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the

3

public and private interests at stake. Stewart Org., 487 U.S. at 29. In considering this issue, the Court is mindful that it must "examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." Bourdon v. United States Dep't of Homeland Security, 235 F. Supp. 3d 298, 306 (D.D.C. 2017) (quoting Cameron v. Thornburgh, 938 F.2d 253, 256 (D.C. Cir. 1993)).

## III. Analysis

The Court will first determine whether this case could have been brought in the Western District of Missouri before examining the private- and public-interest factors relevant to transfer.

### A. Propriety of New Venue

As Plaintiffs have filed suit against federal agencies, venue is governed by 28 U.S.C. § 1391(e). See Ctr. for Envtl. Sci., Accuracy & Reliability v. Nat'l Park Serv., 75 F. Supp. 3d 353, 356 (D.D.C. 2014). Under that section, venue lies in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . [,] or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Because Plaintiffs reside in Kansas City, Missouri, see Compl. at 1 — which sits within the Western District of Missouri — this preliminary hurdle is easily cleared. In other words, they could have sued there, and they do not contend otherwise.

### B. Private- and Public-Interest Factors

#### 1. *Private-Interest Factors*

The "private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013). Because this motion

4

ultimately turns on where the claim arose, the Court will initially address that factor. It then separately considers the first two factors and then examines the last three concurrently.

### a. Location Where Claims Arose

"When the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum, transfer is favored." Tower Labs, Ltd. v. Lush Cosmetics Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018). "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009). The "gravamen of Plaintiff's Complaint is that errors were committed during the adjudication of Plaintiff's [application]." Bourdon, 235 F. Supp. 3d at 307; see also Compl., ¶¶ 28–37. The question before this Court, then, is where that adjudication occurred. See Bourdon, 235 F. Supp. 3d at 306–07.

Defendants argue that the Missouri NBC made the decision to deny Plaintiffs' applications. See ECF No. 10 (Reply) at 2–3. They point out that the denials, as well as requests for evidence during the application process, were issued from the NBC and signed by the NBC Director. See Reply at 2–3; ECF No. 8-1 (Godinez denial); ECF No. 8–2 (Esteban and N.V.E. denials); ECF No. 9–2 (Godinez request for evidence); ECF No. 9–3 (Esteban request for evidence); ECF No. 9-4 (N.V.E request for evidence). According to Defendants, USCIS thus "adjudicated and denied Plaintiffs' applications" "through" the Lee's Summit NBC, and "[a]ny alleged error concerning those decisions would have been committed by USCIS in the Western District of Missouri." MTT at 4. Because courts routinely grant transfer motions when the transferee district encompasses the USCIS Field Office or Service Center that adjudicated a plaintiff's immigration petition, Defendants conclude that the Court should find that this factor

5

supports their Motion.  Id. at 2–3, 4–5 (collecting cases); see, e.g., McAfee, LLC v. U.S. Citizenship & Imm. Servs., No. 19-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (granting transfer to Central District of California when "USCIS California Service Center processed and denied [plaintiff's] request" for H–1B visa); Ngonga v. Sessions, 318 F. Supp. 3d 270, 275–76 (D.D.C. 2018) (granting transfer to Eastern District of Virginia when "Field Office in Fairfax and the [Board of Immigration Appeals] in Falls Church made all decisions regarding Plaintiffs' particular [visa] application").

Plaintiffs disagree. While acknowledging that the NBC officially denied their applications, they contend that this Court should not place great weight on those mere "ministerial act[s]" and should instead focus on the higher-level decisionmaking that they say occurred in the District of Columbia.  See ECF No. 9 (Pl. Opp.) at 4–5 (quotation marks omitted).  According to Plaintiffs, "[T]he NBC is a support office which does little more than administratively process applications and prepare[] them for adjudication" at USCIS satellite offices, id. at 2, and it is thus unlike the USCIS Field Offices and Service Centers that "adjudicate the legal issues and factual matters presented by applicants."  Id. at 7.  The Field Office Directorate in Washington, they believe, is in fact "responsible for any decisions 'on immigration benefit applications'" and is the "real decision-maker."  Id. at 5 (quoting Field Operations Directorate, U.S. Citizenship and Immigration Services (Sept. 25, 2019), https://www.uscis.gov/about-us/directorates-and-program-offices/field-operations-directorate). Plaintiffs contend that, since that Directorate made the key "legal determination" that underlies the NBC's EAD denials — namely, that SIJ grantees are not parolees for purposes of EAD applications — the case should remain here.  Id. at 2–3, 4–5.

The Court finds Defendants' arguments more persuasive.  According to a USCIS webpage that Plaintiffs rely on in their Opposition, and contrary to their above position, the NBC "adjudicates some form types to completion including I–765s," the applications at issue in this case.  See Field Office Directorate.  Further, the NBC Directors' signatures on the requests for evidence and denials support the position that the NBC actually adjudicated Plaintiffs' applications.  See Reply at 2–3.  Plaintiffs' attempt to differentiate the NBC from other satellite USCIS offices on the basis that the NBC does not adjudicate claims, then, is unsupported, as is their effort to distinguish Defendants' cases supporting transfer.  See Pl. Opp. at 5–6.

Nor does Plaintiffs' contention that the NBC's decision was based on a higher-level USCIS legal determination undermine transfer.  While "aspects of this adjudication may have been influenced" by decisions at the Field Office Directorate in Washington, Bourdon, 235 F. Supp. 3d at 307, courts in this district have repeatedly endorsed transfer in the face of such minimal ties to D.C.  See, e.g., id. at 307, 309–10 (granting transfer motion over plaintiff's claim that USCIS policy memos tied case to this district when adjudication of immigration-related petition occurred in transferee district); Pearson v. Rodriguez, 174 F. Supp. 3d 210, 213 (D.D.C. 2016) ("Plaintiffs argue . . . that the USCIS policy underlying the agency's decision was issued by a senior official at USCIS headquarters, but even if true, such 'attenuated or insignificant involvement by an official in the District of Columbia does not support venue here.'") (internal citation omitted) (quoting Aftab v. Gonzalez, 597 F. Supp. 2d 76, 82 (D.D.C. 2009)); Aftab, 597 F. Supp. 2d at 81–82 (collecting cases and granting transfer when plaintiff challenged USCIS Texas Service Center delay in adjudicating his adjustment-of-status application); Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 19–20 (D.D.C. 2008) (granting transfer when plaintiff's I–765 application, among other petitions, would be adjudicated in transferee district).  The Court,

7

Case 4:20-cv-00828-GAF   Document 12   Filed 10/02/20   Page 7 of 11

consequently, agrees with Defendants that the decisionmaking process relevant to this case occurred in the Western District of Missouri and that this factor thus supports transfer.

### b. Plaintiff's Choice of Forum

While a plaintiff's choice of forum is usually given deference, this deference is "not always warranted 'where the plaintiff's choice . . . has no meaningful ties to the controversy,' and where transfer is sought 'to [a] forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected . . . .'" Jimenez v. R&D Masonry, Inc., No. 15–1255, 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) (alteration in original) (quoting Trout Unlimited, 944 F. Supp. at 17). "Indeed, when 'the forum preferred by the plaintiff is not his home forum,' and the defendant prefers the plaintiff's home forum, there is little reason to defer to the plaintiff's preference." Id. (quoting Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 (D.D.C. 2000)). That is the case here.

Plaintiffs recast their same arguments regarding where the claim arose, contending that meaningful ties exist in this district because the Field Office Directorate in Washington conducted "the underlying legal analysis employed by USCIS" in denying the applications. See Pl. Opp at 4–7. The Court, however, just explained why this position is unavailing. No deference is thus warranted on this factor. See Ngonga, 318 F. Supp. 3d at 275.

### c. Defendants' Choice of Forum

While a defendant's choice of forum is relevant to deciding a § 1404(a) motion, it is "not ordinarily entitled to deference." Tower Labs, Ltd., 285 F. Supp. 3d at 326. As Defendants have moved to transfer, "they must establish that the added convenience and justice of litigating in their chosen forum overcomes" any deference to Plaintiffs' choice of venue. Id. Since Plaintiffs

8

receive no deference and the adjudication at issue occurred in Lee's Summit, Defendants choice of forum is neutral or supports transfer.

> d. Convenience of Parties, Convenience of Witnesses, and Ease of Access to Sources of Proof

The final three factors, which relate to convenience, do not weigh heavily in favor of either venue and perhaps support transfer. Administrative Procedure Act cases typically rely on the record and few, if any, witnesses. These factors, moreover, carry less weight during the pandemic because this Court, like many, has taken to conducting remote hearings and allowing witnesses to be present by video conference or telephone. But, if any witnesses were needed, or the administrative record were required, such "potential sources of proof . . . would appear to be easier to access in [Missouri], where the events at issue took place." Bourdon, 235 F. Supp. 3d at 308. Overall, the Court does not find these factors particularly informative in this case and views them as neutral or supporting transfer.

Viewing these private-interest factors together, therefore, the scale clearly tips in favor of transfer.

> *2. Public-Interest Factors*

"The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." Douglas, 918 F. Supp. 2d at 31.

> a. Transferee Court's Familiarity with Governing Laws

This case solely involves the interpretation of federal statutes, with which this Court and the Western District of Missouri "are equally familiar." Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 20 (D.D.C. 2008). This factor, therefore, is in equipoise. See Nat'l Wildlife Fed'n v.

9

Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor").

### b. Relative Congestion of Courts

Defendants, citing the Federal Court Management Statistics compiled in 2018, contend that this factor supports transfer because it takes longer for a civil case to go from filing to trial in this district than it does in the Western District of Missouri. See MTT at 6–7 (citing United States District Courts – National Judicial Caseload Profile (June 30, 2018), https://www.uscourts.gov/statistics-reports/federalcourt-) (46.1 months to trial in this district and 27 months in Western District of Missouri). This factor, nonetheless, is a wash, primarily because APA cases typically do not go to trial, and the pandemic has affected docket congestion across the country. The state of this Court's own docket, moreover, would not delay disposition.

### c. Local Interest in Controversies

The final consideration for a discretionary transfer under § 1404(a) is the local interest in deciding controversies. This factor relies on the same facts that the Court considered in analyzing where the claim arose, and the outcome is identical.

"Controversies should be resolved in the locale where they arise," a "policy rationale [that] applies equally to the judicial review of an administrative decision which will be limited to the administrative record." Trout Unlimited, 944 F. Supp. at 19. As the denials of Plaintiffs' challenged I–765 applications occurred in the Western District of Missouri, and Plaintiffs now seek judicial review under the APA, the Court will heed this rationale and find that this final factor favors transfer.

Like the private-interest considerations, the public-interest factors thus also support transfer.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting the Defendants' Motion and transferring the case to the Western District of Missouri.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 2, 2020