IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| YOSILA GODINEZ, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 20-00828-CV-W-GAF |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY and U.S. CITIZENSHIP ) | |
| AND IMMIGRATION SERVICES, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Now before the Court is Defendants U.S. Department of Homeland Security ("USDHS") and U.S. Citizenship and Immigration Services' ("USCIS") (collectively "Defendants") Motion to Dismiss for failure to state a claim. (Doc. # 15). Plaintiffs Yosila Godinez ("Yosila"), Oscar Velasquez Esteban ("Oscar"), and N.V.E., by his parent and next friend Oscar Omar Velasquez ("N.V.E."), (collectively "Plaintiffs") oppose. (Doc. # 16). For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## DISCUSSION

### I. BACKGROUND

All three Plaintiffs are citizens and nationals of Guatemala and entered the United States while minors. (Doc. # 1 ("Compl."), ¶¶ 12-14). Prior to coming to the United States, Yosila lived with her biological mother, who refused to provide for her financially, physically, or emotionally. (*Id.* at ¶ 12). Oscar and N.V.E. are brothers and, before coming to the United States, lived with

their grandmother because their mother refused to provide for them financially, physically, and emotionally. (*Id.* at ¶¶ 13-14).

Yosila traveled to the United States alone to live with her father, who was granted sole custody of her after her arrival by a state court. (*Id.* at ¶ 12). As part of the custody order, the state court judge determined that Yosila had been abandoned by her biological mother and that it was not in Yosila's best interest to be returned to Guatemala or be reunited with her mother. (*Id.*).

When Oscar and N.V.E.'s grandmother became too old to care for them, the brothers left Guatemala to seek out their father in the United States. (*Id.* at ¶¶ 13-14). Customs and Border Protection initially apprehended Oscar and N.V.E. and placed them in the custody of the Office of Refugee Resettlement. (*Id.*). Authorities located their father a few months later, and they were released to him. (*Id.*). Subsequently, a state court judge determined that it was not in Oscar's and N.V.E.'s best interests to be returned to Guatemala or be reunited with their mother and granted their father sole custody of Oscar and N.V.E. (*Id.*).

Based on these respective findings, all Plaintiffs filed for benefits under the Special Immigrant Juvenile ("SIJ") program using a Form I-360, which USCIS subsequently approved. (*Id.* at ¶¶ 12-14). After receiving approval, Plaintiffs applied for employment authorization documents ("EAD") with proof that the I-360 applications were approved. (*Id.* at ¶¶ 12-14). USCIS denied each EAD application, determining Plaintiffs could not prove they were parolees and, therefore, were ineligible for the benefits as public interest parolees. (*Id.*). As a result, Plaintiffs have been unable to obtain driver's licenses or social security cards. (*Id.*). Yosila and

Oscar are also unable to seek employment or continue their education and N.V.E. is unable to take college classes while in high school due to his lack of social security number. (*Id.*).

Plaintiffs filed this lawsuit, seeking declaratory and injunctive relief from Defendants' denial of their EAD applications. (*See id. generally*). Importantly, Plaintiffs only seek to compel Defendants to consider their applications and adjudicate them. (*Id.*). Plaintiffs do not seek to compel Defendants to grant the applications. (*Id.*).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6) motion should be granted only if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. *Twombly*, 550 U.S. at 570.

## III. ANALYSIS

In 1990, Congress established the SIJ program, which, as amended, allows unmarried aliens under 21 years old who have been abandoned, abused, or neglected by one or both of their parents, and whose best interests are not served by return to their country of origin as determined by a state court, to seek special immigrant status in the United States. Immigration Act of 1990,
3

Pub. L. No. 101-649 § 153(a), 104 Stat. 4978 (codified as amended at 8 U.S.C. § 1101(a)(27)(J)); Richard F. Storrow, *Unaccompanied Minors at the U.S.-Mexico Border: The Shifting Sands of Special Immigrant Juvenile Status*, 33 Geo. Immigr. L.J. 1, 7 (2018). The law provided such young people a path to lawful permanent residence and provided waivers for most grounds of removability, except serious crimes and concerns for national security. Pub. L. No. 101-649 § 153(b) (as codified at 8 U.S.C. §§ 1255(h) and 1227(c)). Congress created the statute as a humanitarian gesture to aid abandoned, neglected, and abused children, no matter their citizenship status, and received bipartisan support both initially and during subsequent amendments that broadened the safeguards to such children. *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 169 (3d Cir. 2018); Storrow, *supra*, at 5, 7.

Applying for an adjustment of status and seeking employment authorization are two separate, yet related, proceedings, as an alien's status impacts the amount of discretion the USCIS has when determining (a) whether to grant employment authorization and (b) the limits of that authorization. *See* 8 C.F.R. § 274a.12. To be able to adjust one's status to permanent resident, an alien must be "inspected and admitted" or "paroled"[1] into the United States. 8 U.S.C. § 1255(a). Persons with SIJ status are "deemed, for purposes of [§ 1255(a)], to have been paroled into the United States." *Id.* at § 1255(h). Statutes and regulations do not explicitly indicate whether SIJs are permitted to seek employment authorization. However, the regulations state that, except for certain aliens not relevant to this discussion, "an alien paroled into the United States temporarily

---

[1] In immigration law, "parole" is a mechanism where aliens are allowed to physically enter or remain in the United States without inspection, at the discretion of an immigration officer, pending further review of admissibility. 8 U.S.C. § 1182(d)(5); Jeffrey A. Bekiares, Note, *In Country, on Parole, Out of Luck – Regulating Away Alien Eligibility for Adjustment of Status Contrary to Congressional Intent and Sound Immigration Policy*, 38 Fla. L. Rev. 713, 715 n.10, 719-21 (2006).

4

for urgent humanitarian reasons or significant public benefit pursuant to section 212(d)(5)[2] of the Act" is eligible to and must "apply for work authorization." 8 C.F.R. 274a.12(c)(11).

A. **Count One**

Concerning Count One, Defendants argue Plaintiffs are parolees only for purposes of adjusting their status and that the decision to grant an EAD is within agency discretion. (Doc. # 15, pp. 4-8). Plaintiffs argue that Defendants' decisions to deny them EADs is incongruent with Congressional intent, was arbitrary and capricious, constituted an abuse of discretion, and was not in accordance with the law. (Doc. # 16, pp. 5-15). Following extensive research and consideration of the parties' arguments, the Court concludes that the question of whether an alien given SIJ status is eligible to apply for an EAD is a matter of first impression.

Under the Administrative Procedures Act ("APA"), "courts must set aside an agency decision that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Velasquez v. Barr*, 979 F.3d 572, 576 (8th Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)). Additionally, if the agency decision is "contrary to constitutional right, power privilege, or immunity" or is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," courts must set it aside. 5 U.S.C. § 706(2)(B), (C). "In reviewing an agency decision, [courts] apply the two-step analysis from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Velasquez*, 979 F.3d at 576. "First, [courts] determine 'whether Congress has directly spoken to the precise question at issue.'" *Id.* (quoting *Chevron*, 467 U.S. at 842). "At this step, [courts] consider the language of the statute itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (alteration and quotation omitted). "If the statute's meaning is clear, then both the courts and

---

[2] Codified at 8 U.S.C. § 1182(d)(5).

agencies 'must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Chevron*, 467 U.S. at 842–43).

As noted above, the statute governing adjustment of status states that SIJs are "deemed, for purposes of [§ 1255(a)], to have been paroled into the United States." 8 U.S.C.§ 1255(h). Defendants argue that SIJS are considered paroled *only* for purposes of adjustment of status, and not for any other possible purpose, because of the language "deemed, for purposes of [§ 1255(a)]." (Doc. # 15, pp. 4-6). However, Defendants read the "only" into the statute. Although § 1255(h) expressly states that SIJs are deemed paroled for purposes of adjustment, this does not preclude SIJs from being deemed paroled for some other purpose.

In the broader context, Congress established the SIJ program for humanitarian purposes. *Osorio-Martinez*, 893 F.3d at 169; Storrow, *supra*, at 5, 7. As initially passed, the legislation cleared the path for abandoned, neglected, and abused children to seek lawful permanent resident status without fear of being returned to the places where they suffered trauma. Pub. L. No. 101-649, § 153(b). At its passage, the statute did not include the language at issue. *See id.* at § 153.

Just a year later, Congress learned impediments remained for those children seeking an adjustment of status under the program because they had not "been inspected and admitted or paroled into the United States" or had "failed to continuously maintain lawful nonimmigrant status or [had] been employed without authorization in the United States." Special Immigrant Status, 56 Fed. Reg. 23207 (May 21, 1991). As a result, Congress amended the adjustment of status statute to include subsection (h), which deemed SIJs as having been paroled. 8 U.S.C. § 1255(h). This evidences Congress's desire to ensure the safeguards for abandoned, neglected, and abused children were not subverted, in the name of humanitarian and public interest relief. *Osorio-*

*Martinez*, 893 F.3d at 169. Consequently, it is clear that SIJs are also paroled for humanitarian purposes, thus rendering them eligible for work authorization. 8 C.F.R. § 274a.12(c)(11).

Such a reading does not "flout[] the interpretive canon against surplusage" as argued by Defendants. (Doc. # 15, pp. 5-6). Concluding that SIJs are paroled for purposes of § 1255(a) and for humanitarian purposes does not mean that they are paroled for *all* purposes. Indeed, Defendants' own regulations list other reasons aliens might be granted parole, including for serious medical conditions; as pregnant women; as witnesses in judicial proceedings; for continued detention not in the public interest as determined by officials; and for juveniles in certain other circumstances. 8 C.F.R. § 212.5(b).

Defendants next argue that their discretionary authority over EAD applications precludes judicial review. (Doc. # 15, pp. 6-8). Defendants are correct that they have discretion to approve applications filed under 8 C.F.R. § 274a.12(c)(11). *See* 8 C.F.R. § 274a.13(a)(1). However, Plaintiffs still have the right to seek EADs even though Defendants ultimately may use their discretion to deny them EADs. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), *superseded on other grounds by statute as recognized in Dep't of Homeland Sec. v. Thuraissigiam*, --U.S.--, 140 S. Ct. 1959 (2020); *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing the "right to seek relief" is "separate and distinct from a right to the relief itself"). Judicial review of Defendants' denial of Plaintiffs' EAD applications is available because Defendants did not deny them based on their discretion, but rather because Defendants incorrectly

7

interpreted statutory provisions as precluding Plaintiffs from even applying in the first place. *See* 5 U.S.C. § 706(2)(A), (B), (C); *Estrada-Rodriguez v. Lynch*, 825 F.3d 397, 403-04 (8th Cir. 2016).

**B.     Count Two**

Finally, Defendants argue Count Two should be dismissed because their actions are in line with the relevant statutes and regulations and because Plaintiffs do not have a constitutional right to work without authorization. (Doc. # 15, pp. 9-10). As previously discussed, Defendants' actions are incongruent with applicable statutes and regulations, and therefore, their first argument for dismissal of Count Two is without merit.

Turning to Defendants' second argument, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, that aliens "are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship." *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). "Although the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment" for citizens, *Greene v. McElroy*, 360 U.S. 474, 492 (1959), "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." *Mathews*, 426 U.S. at 81. "Aliens acquire only the 'limited status' established by the regulations and statutes." *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1273 (S.D. Fla. 1989) (citing *Pilapil v. INS*, 424 F.2d 6, 11 (10th Cir. 1970)).

The Complaint alleges a procedural due process violation. (*See* Compl., ¶ 36). "A plaintiff alleging a procedural due process violation must show: (1) that she had a protected interest, and

(2) that she was deprived of that interest by [governmental] action without due process of law." *Aliens for Better Immigr. Laws v. United States*, 871 F. Supp. 182, 184 (S.D.N.Y. 1994) (citing *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)). "The protected interest must be 'already acquired.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972)).

Plaintiffs argue the right to hold specific private employment and to follow a chosen profession is a property and/or liberty interest. (Compl., ¶ 35). For purposes of due process, a property interest must derive from a source independent of the Constitution, such as federal or state statutes or regulations. *Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). As previously discussed, federal regulations establish that SIJs like Plaintiffs have a right to apply for an EAD but do not have an automatic right to acquire an EAD. *See* 8 C.F.R. §§ 274a.12(c)(11), 274a.13(a)(1). Consequently, Plaintiffs do not have a property interest protected by due process. Nor do they have a liberty interest. *See WJA Realty*, 708 F. Supp. at 1273 (stating aliens "have no constitutional right to work without authorization") (citing *Pilapil*, 424 F.2d at 11). Accordingly, Count Two does not state a constitutional claim for relief.[3]

## CONCLUSION

Defendants did not deny Plaintiffs' EAD applications pursuant to discretionary authority but rather because they incorrectly determined Plaintiffs were not parolees for purposes of seeking

---

[3] To the extent Plaintiffs allege a substantive due process violation, it too is without merit. Because the political branches bear the responsibility for regulating the relationship between the United States and aliens, *Mathews*, 426 U.S. at 81, court review is deferential. A law that does not burden a fundamental right and is rationally related to a legitimate governmental purpose does not deprive an alien of substantive due process. *Reno v. Flores*, 507 U.S. 292, 301-06 (1993). While the Court does not agree that a decision to deny an EAD is rationally related to promoting public safety, it does rationally relate to other legitimate governmental objectives, such as ensuring citizens are not displaced from employment and discouraging abuse of the SIJ benefit as a workaround for other types of visas. *Cf. Birchansky v. Clabaugh*, 955 F.3d 751, 758 (8th Cir. 2020) ("States are not required to 'choose between attacking every aspect of a problem or not attacking the problem at all.' A law supported by some rational basis does not offend the constitution merely because it is

work authorization. Thus, Plaintiffs states a plausible claim for relief in Count One. However, Count Two fails because Plaintiffs, as SIJs, have no constitutional right to hold specific private employment and to follow a chosen profession like citizens do. For these reasons and the reasons discussed above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

s/ Gary A. Fenner  
GARY A. FENNER, JUDGE  
UNITED STATES DISTRICT COURT

DATED: February 10, 2021

---

imperfect, mathematically imprecise, or results in some inequality.") (quoting *Dandridge v. Williams*, 397 U.S. 471, 485-87 (1970)).